KELLY ALLISON *v.* MICHAEL T. MANETTA ET AL.
(AC 24663)

Dranginis, Flynn and Bishop, Js.

Argued June 9—officially released August 17, 2004

*John C. Fitzgerald, Jr.*, for the appellant (plaintiff).

*Lorinda S. Coon*, with whom, on the brief, was *Jeffrey C. Pingpank*, for the appellee (defendant state of Connecticut).

*Opinion*

DRANGINIS, J. This appeal from the judgment of the trial court dismissing the claims against the defendant state of Connecticut requires us to determine, pursuant to General Statutes § 52-556,[1] whether a department of transportation (department) truck that had been parked on a roadway was being operated at the time of the accident in which the plaintiff, Kelly Allison, was injured. We conclude, as a matter of law, that when the operator of the truck had parked it as an incident of his required travel to perform his duties as a department employee, he was operating the truck within the scope of § 52-556. We reverse the judgment of the trial court.

The following facts and procedural history are relevant to our decision. In October, 2002, the plaintiff commenced a personal injury action against the defendants Michael T. Manetta, Richard Gray, James M. Zucco and the state of Connecticut.[2] The plaintiff alleged, in part, that on February 26, 2001, she was operating her motor vehicle in an easterly direction on Route 44 in Salisbury. At that time and place, Manetta allegedly was operating a tractor trailer and proceeding west on Route 44 when he negligently maneuvered his vehicle over the double

---

[1] General Statutes § 52-556 provides: "Any person injured in person or property through the negligence of any state official or employee when operating a motor vehicle owned and insured by the state against personal injuries or property damage shall have a right of action against the state to recover damages for such injury."

[2] The state of Connecticut is the only defendant involved in this appeal.

line into the eastbound lane in order to pass a department truck parked partially within in the westbound lane. In doing so, Manetta collided with the plaintiff's vehicle, causing her serious injuries. The plaintiff also alleged that the tractor trailer Manetta was operating was owned by Gray, who was doing business as Richard Gray Trucking.[3]

In addition, the plaintiff alleged that Zucco was a department employee operating a dump truck (truck) owned by the state. She alleged that on the date in question, Zucco negligently had stopped the truck beneath a ridge on Route 44 in such a manner that the truck partially obstructed the westbound lane. Zucco allegedly failed to use any means of warning to alert drivers that the truck was parked in a manner that obstructed the westbound lane of Route 44. The plaintiff alleged that, pursuant to § 52-556, the state was liable for Zucco's negligence.

The state and Zucco filed a joint motion to dismiss the plaintiff's claims against them. Zucco argued that, as a state employee acting in the course of his employment, he is immune from the liability alleged in the complaint. The state argued that § 52-556 does not grant the plaintiff a cause of action against it because the truck was parked and was not being operated by Zucco at the time of the collision.[4] After the plaintiff deposed Zucco, she filed an objection to the motion to dismiss. The court granted the motion to dismiss the claims against Zucco and the state by memorandum of decision on September 16, 2003.

---

[3] The claims against Manetta and Gray were pending at the time the plaintiff appealed from the judgment dismissing the claims against the state. All of the plaintiff's claims against the state were resolved by the motion to dismiss and, therefore, there is a final judgment for purposes of this appeal. See Practice Book § 61-3.

[4] The state acknowledged that at the time of the accident, it owned and insured the truck and that Zucco was using it in the course of his employment.

The court noted that in general, the state is immune from suit on the basis of sovereign immunity. The legislature established an exception to the general rule by enacting § 52-556, which provides that the state is liable for injuries caused by a state employee while operating a state owned and insured motor vehicle. The court relied on *Rivera* v. *Fox*, 20 Conn. App. 619, 569 A.2d 1137, cert. denied, 215 Conn. 808, 576 A.2d 538 (1990), which held that the operation of a motor vehicle is a question of law to be determined by the court. Id., 621. In following the test articulated in *Rivera*; id., 622–23; the court found that there was no temporal congruence between Zucco's operation of the truck and the accident in which the plaintiff was injured. The truck was parked at the time of the accident and was not being operated by Zucco. The court, therefore, granted the motion to dismiss on the ground of sovereign immunity.

The plaintiff appealed, claiming that the court improperly concluded that Zucco's stopping or parking the truck did not constitute operation of the motor vehicle for purposes of § 52-556. She argued, therefore, that the court improperly granted the motion to dismiss as to the state.[5]

"[T]he doctrine of sovereign immunity implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss. . . . When a [trial] court decides a jurisdictional question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . A motion to dismiss tests, inter alia, whether, on the face of the record,

---

[5] On appeal, the plaintiff does not claim that the court improperly granted the motion to dismiss as to Zucco.

the court is without jurisdiction. . . . A determination regarding a trial court's subject matter jurisdiction is a question of law. When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Citations omitted; internal quotation marks omitted.) *Lagassey* v. *State*, 268 Conn. 723, 736–37, 846 A.2d 831 (2004).

The present case requires that we interpret the language of § 52-556, specifically, the phrase, "when operating a motor vehicle . . . ." "The interpretation of a statute, as well as its applicability to a given set of facts and circumstances, involves a question of law and our review, therefore, is plenary." (Internal quotation marks omitted.) Id., 737.

We do not start on a fresh page with respect to the construction of the language at issue. See *Rivera* v. *Fox*, supra, 20 Conn. App. 619. The court properly noted that the state may not be sued unless by legislative action it has consented to be sued. *Fidelity Bank* v. *State*, 166 Conn. 251, 253, 348 A.2d 633 (1974). "General Statutes § 52-556 creates a cause of action against the state and represents a statutory exception to the common law rule of sovereign immunity. . . . In the absence of clear legislative intent, this court will not interpret a statute as waiving the state's sovereign immunity. . . . No legislative history exists to shed light on whether the legislature intended § 52-556 to cover cases where the motor vehicle is stopped, unoccupied . . . . We conclude, however, that the language of § 52-556 does not indicate a clear legislative intent to allow the state to be sued in such cases." (Citations omitted; internal quotation marks omitted.) *Rivera* v. *Fox*, supra, 622.

"The statute requires, before there can be a right of action against the state for the recovery of damages for

injury to person or property, that there be 'negligence of any state official or employee when operating a motor vehicle' owned by the state. The use of the phrase 'when operating a motor vehicle' implies a simultaneousness of negligent operation and injury, because 'when' denotes the time or exact moment at which something is done. [There must be] coalescence in time of the operation and the injury. Without temporal congruence, the state cannot be liable even if the negligent operation of a state owned motor vehicle by a state employee proximately caused the injury." Id., 622–23.

In *Rivera*, the plaintiff's decedent was killed when his motor vehicle struck a stationary, unoccupied truck owned by the department. Id., 620. A department employee had driven the truck to a point in the highway to assist in the cleanup of a fatal accident. Id. "He positioned the truck partly in the left travel lane of the highway and partly on the left shoulder and walked at least 500 feet to the site of that accident. He left the vehicle with its engine running and its strobe lights and four way flashers on and set up flares on the road behind the vehicle. His purpose was to alert oncoming drivers to debris from the accident that was obstructing the highway. Almost two hours later, while the employee was still working at the accident site, the decedent's vehicle collided with the truck and the decedent was killed." Id.

In conducting a legal analysis to determine whether the employee in *Rivera* was operating the truck, this court examined the case law of the courts of states with a similar statute and Connecticut case law concerning the construction of operating a motor vehicle. Id., 623–24. "The general rule established by these cases and others in the context of various statutes is that operation of a motor vehicle occurs when there is a setting in motion of the operative machinery of the vehicle, or there is movement of the vehicle, or there

is a circumstance resulting from that movement or *an activity incident to the movement of the vehicle from one place to another.*" (Emphasis added.) Id., 624. The court granted the department's motion to dismiss because "both parties agree that at the time of the collision the [department] truck was being used as a warning signal. The truck was not parked incident to travel." Id.

In this case, we examine in more detail the circumstances surrounding the plaintiff's collision. At his deposition, Zucco testified, in part, as follows. On the date in question, Zucco was operating the truck on a designated route during which time he looked for highway maintenance problems. At a place close to the point of the collision, he saw water washing out of a driveway. He parked the truck next to the driveway because he was concerned that the water would freeze on the roadway. Zucco left the truck's motor running and exited the vehicle. He did not place any flares, cones or flags about the vehicle, although the strobe lights were operating. He had not positioned the truck in a manner to protect himself while he dug a ditch on the shoulder of the road. When he finished digging the ditch, he set about to get back into the truck. Four minutes elapsed from the time he left the truck to the time he was returning to it when the tractor trailer passed him. At that time, Zucco was standing on the shoulder of the roadway in front of the truck.

The truck that Zucco was operating on the date of the accident was the means of locomotion he used to follow a designated route of state highway to correct maintenance problems he discovered. When he came upon the water running onto the roadway in Salisbury, he parked the truck with its motor running adjacent to the driveway so that he could exit the truck to perform the required maintenance. On this set of facts, we conclude, as a matter of law, that Zucco was operating the

truck within the meaning of § 52-556. He had parked the truck as an activity incident to moving it from one place to another along his designated maintenance route to fulfill his responsibilities for the department. There was, consequently, a temporal congruence between the operation of the truck and the plaintiff's injury.

For the foregoing reasons, we conclude that the court improperly granted the state's motion to dismiss because, as a matter of law, Zucco was operating the truck at the time of the collision.

The judgment dismissing the action as against the defendant state is reversed and the case is remanded for further proceedings in accordance with law.

In this opinion the other judges concurred.