# KELLY ALLISON *v.* MICHAEL T. MANETTA ET AL. (SC 17833)

Borden, Norcott, Katz, Palmer and Vertefeuille, Js.*

---

\* The listing of justices reflects their seniority status on this court as of the date of oral argument.

Argued April 10—officially released November 13, 2007

*Louis B. Blumenfeld,* with whom were *Jeffrey C. Pingpank* and *Lorinda S. Coon,* for the appellant (defendant state of Connecticut).

*John C. FitzGerald, Jr.,* for the appellee (plaintiff).

*Opinion*

VERTEFEUILLE, J. This appeal arises from a negligence action brought by the plaintiff, Kelly Allison, against the defendant state of Connecticut[1] in connection with injuries that the plaintiff had suffered in a motor vehicle accident. The plaintiff claimed, inter alia, that her injuries had resulted from negligence on the part of a state employee, James M. Zucco, in parking a department of transportation (department) dump truck so as partially to obstruct a roadway. The defendant appeals[2] from the judgment of the trial court in favor of the plaintiff after a jury trial.

On appeal, the defendant claims that the trial court improperly: (1) failed to instruct the jury regarding *Rivera* v. *Fox,* 20 Conn. App. 619, 569 A.2d 1137, cert. denied, 215 Conn. 808, 576 A.2d 538 (1990); (2) failed to direct a verdict for the defendant or to set aside the verdict because the defendant had established that Zucco was not operating the truck for purposes of Gen-

[1] The plaintiff also named Michael T. Manetta, Richard Gray and James M. Zucco as defendants. Manetta, Gray and Zucco are not parties to this appeal. Throughout this opinion, we refer to the state of Connecticut as the defendant.

[2] The defendant appealed from the judgment of the trial court to the Appellate Court, and we thereafter transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

eral Statutes § 52-556[3] and because the plaintiff had presented no expert testimony regarding the applicable standard of care for a state employee parking a truck on the roadway while addressing a hazardous road condition; (3) denied the defendant's request to instruct the jury that maintenance vehicles displaying flashing lights legally are permitted to stop and park on a highway pursuant to General Statutes §§ 14-251[4] and 14-290;[5] and (4) denied the state's motion for remittitur. We agree with the defendant's first claim, which is dispositive of this appeal. We therefore reverse the judg-

[3] General Statutes § 52-556 provides: "Any person injured in person or property through the negligence of any state official or employee when operating a motor vehicle owned and insured by the state against personal injuries or property damage shall have a right of action against the state to recover damages for such injury."

[4] General Statutes § 14-251 provides in relevant part: "No vehicle shall be permitted to remain stationary within ten feet of any fire hydrant, or upon the traveled portion of any highway except upon the right-hand side of such highway in the direction in which such vehicle is headed . . . . No vehicle shall be permitted to remain stationary within the limits of a public highway in such a manner as to constitute a traffic hazard or obstruct the free movement of traffic thereon . . . . Nothing in this section shall be construed to apply to emergency vehicles and to maintenance vehicles displaying flashing lights or to prohibit a vehicle from stopping, or being held stationary by any officer, in an emergency to avoid accident or to give a right-of-way to any vehicle or pedestrian as provided in this chapter, or from stopping on any highway within the limits of an incorporated city, town or borough where the parking of vehicles is regulated by local ordinances. Violation of any provision of this section shall be an infraction."

[5] General Statutes § 14-290 (b) provides: "The following provisions of the general statutes shall not apply to operators of maintenance vehicles or equipment of any governmental agency or agent thereof or to vehicles or equipment of any governmental agency or agent thereof, so far as such exemption is necessary, while such operators and equipment are engaged in or are preparing to engage in or are departing from highway maintenance operations on any highway, road or street, provided the Department of Transportation shall not by reason of such exemption suffer any loss of revenue granted from any agency or department of the federal government for the federal Interstate Highway System or any other highway system: Sections 14-216, 14-230 to 14-233, inclusive, 14-235 to 14-242, inclusive, 14-244 to 14-247, inclusive, 14-250a to 14-252, inclusive, 14-261, 14-262, 14-264 to 14-271, inclusive, 14-299, 14-301 to 14-308, inclusive."

ment of the trial court and remand the case for a new trial. We also address the merits of the defendant's second and third claims because they are likely to arise on retrial.[6]

The Appellate Court's opinion sets forth the following relevant facts, as alleged in the plaintiff's complaint, and procedural history. "In October, 2002, the plaintiff commenced a personal injury action against . . . Michael T. Manetta, Richard Gray, [Zucco and the defendant]. The plaintiff alleged, in part, that on February 26, 2001, she was operating her motor vehicle in an easterly direction on Route 44 in Salisbury. At that time and place, Manetta allegedly was operating a tractor trailer and proceeding west on Route 44 when he negligently maneuvered his vehicle over the double line into the eastbound lane in order to pass a department truck parked partially within . . . the westbound lane. In doing so, Manetta collided with the plaintiff's vehicle, causing her serious injuries. The plaintiff also alleged that the tractor trailer Manetta was operating was owned by Gray, who was doing business as Richard Gray Trucking.

"In addition, the plaintiff alleged that Zucco was a department employee operating a [truck] owned by the [defendant]. She alleged that on the date in question, Zucco negligently had stopped the truck beneath a ridge on Route 44 in such a manner that the truck partially obstructed the westbound lane. Zucco allegedly failed to use any means of warning to alert drivers that the truck was parked in a manner that obstructed the westbound lane of Route 44. The plaintiff alleged that, pursuant to § 52-556, the [defendant] was liable for Zucco's negligence.

---

[6] Because we conclude that the trial court failed to instruct the jury properly, and, accordingly, remand the case for a new trial, we do not reach the merits of the defendant's claim that the trial court improperly denied the defendant's motion for remittitur.

"The [defendant] and Zucco filed a joint motion to dismiss the plaintiff's claims against them. Zucco argued that, as a state employee acting in the course of his employment, he is immune from the liability alleged in the complaint. The state argued that § 52-556 does not grant the plaintiff a cause of action against it because the truck was parked and was not being operated by Zucco at the time of the collision. After the plaintiff deposed Zucco, she filed an objection to the motion to dismiss. The [trial] court granted the motion to dismiss the claims against Zucco and the [defendant] . . . [finding] that there was no temporal congruence between Zucco's operation of the truck and the accident in which the plaintiff was injured. The truck was parked at the time of the accident and was not being operated by Zucco. The [trial] court, therefore, granted the motion to dismiss on the ground of sovereign immunity.

"The plaintiff appealed [from the trial court's decision granting Zucco and the defendant's motion to dismiss], claiming that the court improperly [had] concluded that Zucco's stopping or parking the truck did not constitute operation of the motor vehicle for purposes of § 52-556. She argued, therefore, that the [trial] court improperly granted the motion to dismiss as to the [defendant]."[7] (Citations omitted.) *Allison* v. *Manetta*, 84 Conn. App. 535, 536–38, 854 A.2d 84, cert. denied, 271 Conn. 931, 859 A.2d 582 (2004).

The Appellate Court concluded that "the [trial] court improperly granted the [defendant's] motion to dismiss because, as a matter of law, Zucco was operating the truck at the time of the collision." Id., 542. Accordingly, the Appellate Court reversed in part the judgment of the trial court and remanded the case for further proceedings. Id.

---

[7] The plaintiff never has claimed that the trial court improperly had granted the motion to dismiss her claims against Zucco.

Thereafter, the matter was tried to a jury. The jury returned a verdict for the plaintiff and awarded damages against the defendant, Manetta, and Gray in the total amount of $1,780,000.[8] The trial court rendered judgment in accordance with the verdict. This appeal followed. Additional facts and procedural history will be set forth as necessary.

I

The defendant first claims that the trial court improperly failed to instruct the jury regarding what the defendant calls the "*Rivera* [e]xception" under *Rivera* v. *Fox*, supra, 20 Conn. App. 624. More specifically, the defendant asserts that the trial court failed to instruct the jury that if the state truck was being used as a warning device or protective barrier at the time that the plaintiff was injured, the defendant was immune from liability because the truck was not being "operated" for purposes of § 52-556. The plaintiff asserts, in response, that the trial court properly instructed the jury in accordance with *Allison* v. *Manetta*, supra, 84 Conn. App. 541–42. We agree with the defendant, and, accordingly, we reverse the judgment of the trial court.

We begin our analysis of this claim with the standard of review. "When reviewing [a] challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in

---

[8] The jury awarded $2 million in damages to the plaintiff, but reduced that award by $220,000, representing 11 percent, for the plaintiff's contributory negligence. The jury found Manetta and Gray collectively 18 percent negligent and the defendant 71 percent negligent, and allocated damages accordingly.

such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper. . . . Failure to charge precisely as proposed by a defendant is not error where the point is fairly covered in the charge. . . . Instructions are adequate if they give the jury a clear understanding of the issues and proper guidance in determining those issues." (Citation omitted; internal quotation marks omitted.) *Smith* v. *Greenwich*, 278 Conn. 428, 437, 899 A.2d 563 (2006).

Before addressing the defendant's first claim on appeal, we review briefly prior appellate precedent construing § 52-556. "It is well settled in Connecticut that, under the doctrine of sovereign immunity, the state cannot be sued unless, by legislative enactment, it consents. . . . [Section] 52-556 creates a cause of action against the state and represents a statutory exception to the common law rule of sovereign immunity." (Citation omitted.) *Rivera* v. *Fox*, supra, 20 Conn. App. 622. Section 52-556 provides that "[a]ny person injured in person or property through the negligence of any state official or employee when operating a motor vehicle owned and insured by the state against personal injuries or property damage shall have a right of action against the state to recover damages for such injury." The statute does not define the phrase "when operating a motor vehicle . . . ." General Statutes § 52-556.

The Appellate Court, however, addressed this issue in *Rivera* v. *Fox*, supra, 20 Conn. App. 624. In *Rivera*, the plaintiff in a wrongful death action claimed that the trial court improperly had rendered summary judgment in favor of the state based on its conclusion that a state employee was not operating a truck at the time of the accident. Id., 621–22. The undisputed facts in *Rivera* had established that an employee drove a state truck

to a point on an interstate highway to assist in the cleanup of a fatal accident. Id., 620. The employee parked the truck partly in the travel lane and partly on the left shoulder of the highway approximately 500 feet from the accident site. Id. The employee then exited the vehicle, leaving the truck's engine running, its strobe lights and four way flashers on and flares on the road behind the vehicle. Id. The employee's "purpose [in so doing] was to alert oncoming drivers to the debris from the accident that was obstructing the highway." Id. Approximately two hours later, while the truck was still parked in the same location, the vehicle of the plaintiff's decedent collided with the truck and the decedent was killed. Id.

The Appellate Court examined the phrase "when operating a motor vehicle" in § 52-556, and concluded that it "implies a simultaneousness of negligent operation and injury, because 'when' denotes the time or exact moment at which something is done." *Rivera* v. *Fox*, supra, 20 Conn. App. 622. Moreover, after examining other cases that had interpreted the term "operation" of a motor vehicle within the context of other statutes, the Appellate Court held that "[t]he general rule established by these cases and others in the context of various statutes is that operation of a motor vehicle occurs when there is a setting in motion of the operative machinery of the vehicle, or there is movement of the vehicle, or there is a circumstance resulting from that movement or an activity incident to the movement of the vehicle from one place to another." Id., 624.

In *Rivera*, both parties had agreed that the truck was being used as a warning signal, and not as a motor vehicle. Id. On the basis of those facts, the Appellate Court concluded that "[t]he truck was not parked incident to travel. It was placed on the highway, not because that was a convenient or an ordinarily appropriate place to park, but because its placement would alert drivers

to the danger ahead." Id. The Appellate Court therefore affirmed the judgment of the trial court in *Rivera* granting summary judgment in favor of the state on the ground that the vehicle was not being operated for purposes of § 52-556. Id.

The Appellate Court addressed this issue again in the first appeal in the present case, *Allison* v. *Manetta*, supra, 84 Conn. App. 535. In that appeal, the plaintiff appealed from the trial court's judgment dismissing the claims against the defendant prior to trial based on the state's sovereign immunity. Because the plaintiff appealed from a dismissal of the case prior to trial, the Appellate Court relied primarily on Zucco's deposition testimony in determining what the evidence at trial might be. Id., 541. The deposition testimony established that: "Zucco was operating the truck on a designated route during which time he looked for highway maintenance problems. At a place close to the point of the collision, he saw water washing out of a driveway. He parked the truck next to the driveway because he was concerned that the water would freeze on the roadway. Zucco left the truck's motor running and exited the vehicle. He did not place any flares, cones or flags about the vehicle, although the strobe lights were operating. He had . . . positioned the truck in a manner to protect himself while he dug a ditch on the shoulder of the road. When he finished digging the ditch, he set about to get back into the truck." Id.

On the basis of that deposition testimony, the Appellate Court concluded that, "[t]he truck that Zucco was operating on the date of the accident was the means of locomotion he used to follow a designated route of state highway to correct maintenance problems he discovered. When he came upon the water running onto the roadway in Salisbury, he parked the truck with its motor running adjacent to the driveway so that he could exit the truck to perform the required maintenance. On

this set of facts, we conclude, as a matter of law, that Zucco was operating the truck within the meaning of § 52-556. He had parked the truck as an activity incident to moving it from one place to another along his designated maintenance route to fulfill his responsibilities for the department. There was, consequently, a temporal congruence between the operation of the truck and the plaintiff's injury." Id., 541–42. The Appellate Court thus concluded that the trial court improperly had granted the defendant's motion to dismiss, and remanded the case for further proceedings. Id., 542.

At trial after the remand in the present case, the defendant requested instructions relating to the use of the truck as a warning device and a protective barrier. The trial court denied the state's request, however, and instructed the jury as follows. "The plaintiff seeks to hold the [defendant] responsible for the negligence of [Zucco]. She seeks to do that based upon [§ 52-556], which makes the [defendant] responsible for personal injuries caused by the negligence of any state employee when operating a motor vehicle owned by the [defendant]. The [department] has admitted that [Zucco] was an employee of the [department] and has stipulated that the parked dump truck was owned by the [defendant]. It is the law that if [Zucco] had parked the state truck as an activity incident to moving it from one place to another along his designated maintenance route to fulfill his responsibilities, he was operating the truck as that word is used in § 52-556, even though the truck was parked and he was outside of it at the time of the accident. In that case the [defendant] is liable for any negligence of [Zucco]." The defendant contends that the trial court's instruction was improper because it failed to explain, consistent with *Rivera* v. *Fox*, supra, 20 Conn. App. 624, that if, at the time of the plaintiff's injuries, the truck was being used as a warning device

or a protective barrier, it was not being "operated" under § 52-556. We agree with the defendant.

The trial court's instruction properly explained that if the truck was parked incident to travel for road maintenance, Zucco was operating the truck for purposes of § 52-556. This explanation is consistent with both *Rivera* v. *Fox*, supra, 20 Conn. App. 624, and *Allison* v. *Manetta*, supra, 84 Conn. App. 536–38. The trial court's instruction, however, was incomplete. The instruction failed to instruct the jury that it also should consider whether the truck was being used as a warning device or as a protective barrier, and, if the jury found that it was, it must find for the defendant because the truck was not being "operated" under § 52-556. The trial court's instruction, therefore, did not provide the jury with proper guidance and a clear understanding of the issues that it was to decide.

"This does not end our inquiry, however. We have repeatedly recognized that [i]t is axiomatic . . . that not every error is harmful. . . . [W]e have often stated that before a party is entitled to a new trial . . . he or she has the burden of demonstrating that the error was harmful. . . . An instructional impropriety is harmful if it is likely that it affected the verdict. . . . In determining whether an instructional impropriety was harmless, we consider not only the nature of the error, including its natural and probable effect on a party's ability to place his full case before the jury, but the likelihood of actual prejudice as reflected in the individual trial record, taking into account (1) the state of the evidence, (2) the effect of other instructions, (3) the effect of counsel's arguments, and (4) any indications by the jury itself that it was misled." (Citation omitted; internal quotation marks omitted.) *Smith* v. *Greenwich*, supra, 278 Conn. 439.

At the trial in this matter, the defendant presented evidence regarding Zucco's use of the truck as a warning

device or protective barrier. Specifically, Zucco testified that he had parked the truck in the manner that he did so as to protect himself and to warn drivers of unsafe roadway conditions caused by the water. The plaintiff introduced evidence regarding whether Zucco had parked the truck incident to travel, namely, that he drove the truck along his regular maintenance route and parked it for approximately four minutes while he addressed a maintenance issue along the roadway. The jury, however, was not instructed that it must make a finding as to whether the truck was being used as a warning device or a protective barrier, or whether it was parked incident to travel for road maintenance. In the absence of a complete instruction on the key issue of the state's liability, we must conclude that the case was not fairly presented to the jury and it is likely that the jury was misled.

The plaintiff asserts that the trial court's instruction properly presented the case to the jury because the instruction was consistent with *Allison* v. *Manetta,* supra, 84 Conn. App. 535. The plaintiff claims that the Appellate Court's ruling in *Allison* required the trial court to instruct the jury as it had done. We disagree. The Appellate Court did state that, "[o]n *this set of facts,* we conclude, *as a matter of law,* that Zucco was operating the truck within the meaning of § 52-556." (Emphasis added.) Id., 541–42. That conclusion, however, was based on Zucco's pretrial deposition testimony, not on evidence presented at trial. The trial court therefore was not bound by the Appellate Court's conclusion that "[Zucco] had parked the truck as an activity incident to moving it from one place to another along his designated maintenance route to fulfill his responsibilities for the department."[9] Id., 542. It was for the jury

[9] We also note that the Appellate Court's statement in *Allison* v. *Manetta,* supra, 84 Conn. App. 541–42, that, "as a matter of law . . . Zucco was operating the truck within the meaning of § 52-556" was overly broad. Whether Zucco was operating the truck within the meaning of § 52-556 at

to decide after considering all the evidence whether the truck was being used as a warning device or a protective barrier or whether it was parked incident to travel for road maintenance purposes. *Rivera v. Fox*, supra, 20 Conn. App. 624.[10] Accordingly, the defendant is entitled to a new trial.

## II

Because of our conclusion that this case must be retried, it is appropriate for us to give guidance on issues that are likely to recur upon retrial. See *Burns v. Hanson*, 249 Conn. 809, 830, 734 A.2d 964 (1999) ("[b]ecause of our conclusion that the plaintiff has established her right to a retrial on all [her claims] . . . it is proper for us to give guidance on issues that are likely to recur on retrial"). Thus, we will address the defendant's next claim that the trial court improperly denied its request to charge the jury that, under §§ 14-251 and 14-290,[11] a state truck being used for mainte-

the time of the accident was a factual question for the jury to determine after trial and proper instruction.

[10] Our resolution of this issue also is dispositive of the defendant's claim that the trial court improperly failed to direct a verdict for the defendant or to set aside the verdict because the evidence demonstrated, as a matter of law, that Zucco was not operating the truck within the meaning of § 52-556 at the time of the accident. The defendant claims that the evidence in the present case established that the truck was being used as a warning signal, and that, under *Rivera v. Fox*, supra, 20 Conn. App. 624, when a vehicle is being used as a warning device or a protective barrier, it is not being operated for purposes of § 52-556. As we have explained previously herein, however, there was conflicting evidence at trial regarding whether the truck was being used as a warning device or a protective barrier, or whether the truck was parked incident to travel while Zucco performed his maintenance duties. It was, therefore, a question of fact for the jury to determine whether the truck was being "operated" for purposes of § 52-556. We have repeatedly acknowledged that "it is the jury's role as the sole trier of the facts to weigh the conflicting evidence and to determine the credibility of witnesses." *State v. Morgan*, 274 Conn. 790, 802, 877 A.2d 739 (2005). Accordingly, we conclude that the trial court did not improperly fail to direct a verdict in favor of the plaintiff or to set aside the verdict under *Rivera v. Fox*, supra, 619.

[11] See footnotes 4 and 5 of this opinion for the text of §§ 14-251 and 14-290.

nance purposes and displaying flashing lights is permitted to stop on a highway. The plaintiff responds that the trial court correctly denied the defendant's request to instruct the jury on §§ 14-251 and 14-290. Specifically, the plaintiff asserts that the jury instruction requested by the defendant was a misstatement of the law and was not relevant because, although §§ 14-251 and 14-290 exempt certain operators of equipment from prosecution for a violation of § 14-251, such exemption does not demonstrate that Zucco's actions in parking the truck on the highway were not negligent. We agree with the plaintiff.

The standard of review pertaining to claims of improper jury instructions is set forth in part I of this opinion. Section 14-251 prohibits, inter alia, vehicles from parking on highways and makes violation of that statute an infraction. Section 14-290 exempts maintenance vehicles displaying flashing lights from the prohibitions of § 14-251. In the present case, the plaintiff alleged in her complaint that Zucco negligently had parked the truck, that Zucco's negligence was the proximate cause of her injuries, and that the defendant is liable for her injuries pursuant to § 52-556. She did not allege that Zucco violated § 14-251; Zucco was not charged with a violation of § 14-251; and there was no evidence presented at trial regarding whether Zucco had violated § 14-251.

The defendant asserts that the trial court improperly denied its request for an instruction under §§ 14-251 and 14-290 because these statutes establish that parking the truck on the roadway does not, in and of itself, constitute negligence on the part of a state employee engaged in road maintenance. It is well established, however, that "[w]hile violation of a statute is negligence, compliance with a statute is not necessarily due care . . . ." D. Wright, J. Fitzgerald & W. Ankerman, Connecticut Law of Torts (3d Ed. 1991) § 38, p. 73; W.

Prosser & W. Keeton, Torts (5th Ed. 1984) § 36, p. 233. Indeed, in a similar case, this court concluded that "[w]hile parking in violation of [what is now § 14-251] would constitute negligence, it does not follow that the statute authorizes the parking of a vehicle upon the traveled portion of the highway without other precautions than those expressly required by statute." *Caviote* v. *Shea*, 116 Conn. 569, 574, 165 A. 788 (1933). Accordingly, we conclude that the trial court need not instruct the jury regarding §§ 14-251 and 14-290 because those provisions do not address the defendant's alleged negligence.

## III

The defendant also claims that the trial court improperly denied its motion to direct a verdict or to set aside the verdict on the ground that the plaintiff failed to present any expert evidence regarding the applicable standard of care. The defendant claims that the plaintiff failed to establish a prima facie case of negligence under § 52-556 because she failed to produce any expert testimony regarding the appropriate standard of care to be exercised when parking a truck along the road to perform maintenance tasks. In response, the plaintiff asserts that such expert testimony was not necessary and would have been inadmissible, because the question of whether Zucco had deviated from the standard of care when he obstructed the roadway did not go beyond the knowledge and experience of the jurors who were the fact finders in the present case. Moreover, the plaintiff claims that the jurors heard the relevant and necessary evidence regarding the reasonableness of Zucco's conduct from other witnesses. We agree with the plaintiff.

We begin with the standard of review by which we evaluate this claim. "The standard of review governing our review of a trial court's denial of a motion to set

aside the verdict is well settled. The trial court possesses inherent power to set aside a jury verdict which, in the court's opinion, is against the law or the evidence. . . . [The trial court] should not set aside a verdict where it is apparent that there was some evidence upon which the jury might reasonably reach their conclusion, and should not refuse to set it aside where the manifest injustice of the verdict is so plain and palpable as clearly to denote that some mistake was made by the jury in the application of legal principles . . . . Ultimately, [t]he decision to set aside a verdict entails the exercise of a broad legal discretion . . . that, in the absence of clear abuse, we shall not disturb."[12] (Internal quotation marks omitted.) *Jackson* v. *Water Pollution Control Authority*, 278 Conn. 692, 702, 900 A.2d 498 (2006).

It is well established that, "[i]f the determination of the standard of care requires knowledge that is beyond the experience of an ordinary fact finder, expert testimony will be required." *Santopietro* v. *New Haven*, 239 Conn. 207, 226, 682 A.2d 106 (1996). Nevertheless, "[a]lthough expert testimony may be admissible in many instances, it is required only when the question involved goes beyond the field of the ordinary knowledge and experience of the trier of fact. . . . The trier of fact need not close its eyes to matters of common knowledge solely because the evidence includes no expert testimony on those matters." (Citations omitted; internal quotation marks omitted.) *State* v. *Padua*, 273 Conn. 138, 149, 869 A.2d 192 (2005).[13] We note that

---

[12] The defendant, in accordance with Practice Book § 16-37, moved for a directed verdict at the close of the plaintiff's case-in-chief and at the close of the evidence. After the jury returned its verdict, the defendant then moved to set aside the verdict and for a judgment notwithstanding the verdict. The issue is, therefore, preserved for appellate review. See *Jackson* v. *Water Pollution Control Authority*, supra, 278 Conn. 702 n.10.

[13] The commentary to § 7-2 of the Connecticut Code of Evidence, regarding the admission of expert testimony, provides: "[T]he expert witness' testimony must assist the trier of fact in understanding the evidence or determining a fact in issue. . . . Crucial to this inquiry is a determination that the scientific, technical or specialized knowledge upon which the expert's testi-

expert testimony has not been required to show: negligent boat operation; *Michalski* v. *Hinz*, 100 Conn. App. 389, 404, 918 A.2d 964 (2007); or detrimental effects of marijuana. *State* v. *Padua*, supra, 149; see also *Ciarlelli* v. *Romeo*, 46 Conn. App. 277, 283, 699 A.2d 217 (citing cases concluding expert testimony not required to prove: effect of operating gasoline station on traffic safety; injuries sustained on plaintiff's property were caused by defendant's blasting; negligence in failing to erect porch railing; fence erected around blasting area insufficient to prevent injuries; obscenity of certain materials for minors), cert. denied, 243 Conn. 929, 701 A.2d 657 (1997). Indeed, in *Marquardt & Roche/Meditz & Hackett, Inc.* v. *Riverbend Executive Center, Inc.*, 74 Conn. App. 412, 426, 812 A.2d 175 (2003), the Appellate Court concluded that expert testimony was not required to demonstrate the difficulty of backing a vehicle out of a parking space, noting instead that that question "is one which our legislature expects all operators of motor vehicles to consider on a regular basis when using public streets." Id., 425.

We conclude that the factual issues raised in the present case involved a commonplace activity with which most jurors are familiar, namely, the parking of a motor vehicle on a public roadside. Moreover, the jurors heard significant testimony from Richard Binkowski, a state trooper and accident reconstructionist who had investigated the accident; Michael Cei, an accredited accident reconstructionist; and Manetta, the driver of the tractor trailer that had struck the plaintiff and a former supervisor with the New York department of transportation. Binkowski and Cei both testified about their opinion regarding the cause of the accident, including the role that the placement of the truck played

---

mony is based goes beyond the common knowledge and comprehension, i.e., 'beyond the ken,' of the average juror." (Citations omitted.)

in the accident. Binkowski, Cei and Manetta all testified that there was adequate room for Zucco to have parked the truck without blocking the roadway. The defendant's expert witness on reconstruction, Stephen Benanti, also confirmed that there was adequate space for Zucco to have parked the truck so as not to block the roadway.

In addition, several photographs of the accident scene were admitted into evidence at trial. These photographs depicted the roadway, including the space available on the shoulder of the roadway, and the curves in the roadway. The photographs also depicted the placement of the truck on the roadway, the road conditions at the time of the accident and the general accident scene. In addition to the testimony of Benanti, Cei, and Manetta, these photographs were available for the examination of the jury to assist them in applying their own knowledge to determine whether Zucco had parked the truck negligently. See *Bader* v. *United Orthodox Synagogue*, 148 Conn. 449, 454, 172 A.2d 192 (1961) ("[p]hotographs . . . were admitted in evidence and available for the examination of the [jurors], who, by the application of their own knowledge and under proper instructions from the court, could determine without the aid of any expert whether the conduct of the defendant constituted . . . negligence"). After considering the evidence adduced at trial, in light of the issues that the jury was asked to decide, we conclude that the trial court did not abuse its discretion in refusing to direct a verdict for the defendant or to set aside the verdict on the ground that the plaintiff failed to present any expert testimony regarding the applicable standard of care.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other justices concurred.